UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| BARRY A. BEELER, | ) | |
| | ) | |
| *Plaintiff*, | ) | 3:15-CV-580 |
| | ) | |
| v. | ) | Judge Collier |
| | ) | |
| TENNESSEE VALLEY | ) | Magistrate Judge Shirley |
| AUTHORITY, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

# **M E M O R A N D U M**

This lawsuit arises out of a condemnation action filed in 2013 by the United States on behalf of the Tennessee Valley Authority ("TVA") against Plaintiff Barry A. Beeler, in which the United States condemned a transmission-line easement and right of way over 2.96 acres of Plaintiff's land. *United States ex rel. TVA v. 2.96 Acres of Land in Knox Cnty.*, No. 3:13-cv-266 (E.D. Tenn. May 10, 2013). After a jury trial, Mr. Beeler, who had represented himself, was awarded just compensation in the amount of $70,000.[1] Mr. Beeler did not appeal that judgment.

On December 30, 2015, Plaintiff, proceeding *pro se*, filed the instant action against TVA and several of its current or former employees (the "Employee Defendants"), alleging their actions in condemning his property were improper. (Doc. 1.) By way of relief, Plaintiff seeks punitive and compensatory damages in the amount of $25,000,000 (Doc. 2 at 14),[2] as well as an

---

[1] The jury awarded Plaintiff $75,000, but the Court granted TVA's motion for judgment as a matter of law and reduced the award to $70,000. *See* E.D. Tenn. Case No. 3:13-cv-266, Doc. 75.

[2] Plaintiff's initial filing contained three separately labeled documents: a "Complaint" (Doc. 1), a "Lawsuit" (Doc. 2), and a "Brief in Support" (Doc. 3). The Court will liberally construe Plaintiff's complaint as comprising all three documents.

injunction prohibiting TVA from acquiring additional property until TVA employees "receive proper training and additional pertinent education (to prevent additional sorrows to other property owners)." (Doc. 1 at 3.) Plaintiff specifically disclaims any quarrel with the legal authority of TVA to condemn his property; rather, he "disputes the methods by which the action was conducted." (*Id.* at 1.)

Plaintiff served process on TVA and the Employee Defendants by sending certified letters to TVA headquarters on January 11, 2016. (Docs. 5–11.) Plaintiff subsequently served the United States as well. (*See* Docs. 13–14.) In lieu of an answer, TVA filed a motion to dismiss, arguing Plaintiff's claims should be dismissed either under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a plausible claim for relief. (Docs. 16, 17.) Plaintiff responded to the motion (Doc. 20), and TVA replied (Doc. 21). On July 6, Plaintiff filed a motion to compel TVA to provide addresses for the Employee Defendants so he could serve them individually. (Doc. 23.) TVA has not yet responded to this motion.

On July 7, the Court attempted to conduct a scheduling conference in this matter. (*See* Doc. 18.) Plaintiff failed to appear for the conference, failed to respond to an attempt to contact him, and has not provided any explanation for his absence. While Plaintiff's conduct may be sanctionable, *see* Fed. R. Civ. P. 16(f); *see also Rogers v. City of Warren*, 302 F. App'x 371, 375–76 (6th Cir. 2008), in the interest of efficiency, the Court elects to rule on the pending motions rather than directing Plaintiff to show cause for his failure to appear.

I. **Plaintiff's Allegations**

The Court reads Plaintiff's complaint to raise four claims against TVA and its employees for allegedly wrongful acts committed in connection with the condemnation of his property.

First, Plaintiff alleges that TVA's estimate of the value of the easement rights to be condemned varied significantly over the course of TVA's interactions with him. TVA initially offered Plaintiff $42,500 for the easement, then raised its offer to $78,000, and finally made a third offer of $88,000. After Plaintiff refused the final offer, TVA initiated condemnation proceedings and tendered $53,100 to the Clerk of Court as its estimate of just and liberal compensation. Plaintiff alleges that TVA's behavior in positing widely varying values was a bad faith attempt to obtain his property for less than its true value, and that these actions violated his Fifth Amendment rights to due process and equal protection. (Doc. 2 at 4–5, 14–15.)

Second, Plaintiff takes umbrage at the manner in which TVA communicated its third offer. According to the complaint, after Plaintiff refused TVA's offer of $78,000, a TVA employee called and offered to pay Plaintiff an additional $10,000 "under the table."[3] Plaintiff refused the offer, and shortly thereafter, TVA initiated the condemnation action. (Doc. 1 at 2.) Plaintiff contends "TVA's failure to acknowledge or make right" this "vile and immoral offer" violated his right to due process.[4] (Doc. 2 at 4.)

---

[3] Although this does not factor into the Court's analysis, given the procedural posture, it should be noted that TVA strongly disputes Plaintiff's characterization of this offer. TVA contends its representative was attempting to explain that TVA was authorized to provide an additional $10,000 in relocation expense reimbursement under the Uniform Relocation Act, 42 U.S.C. §§ 4601 *et seq.*, and that per 42 U.S.C. § 4636, this amount would not be subject to taxation.

[4] Elsewhere in his complaint, Plaintiff intimates TVA initiated the condemnation proceedings in retaliation for his failure to accept TVA's "under-the-table" offer. (Doc. 1 at 3 ¶ 5.) But this is like saying the government forced a defendant to go to trial because the defendant refused to accept a plea bargain. As Plaintiff acknowledges (Doc. 1 at 1), TVA has the right to condemn property in the public interest, provided it pays just compensation. Likewise, Plaintiff has the right to reject TVA's proposed compensation and litigate the value of the property in a condemnation proceeding. The Court finds no merit in this allegation.

Third, Plaintiff catalogs a number of additional perceived errors or transgressions perpetrated by TVA during the course of litigating the condemnation action, including violating a "gentleman's agreement" between Plaintiff and a TVA attorney by visiting his property unannounced, failing to correct alleged misstatements made in court filings, and committing several violations of the Scheduling Order entered in the matter. (*Id.* at 5–13.) Plaintiff avers that these actions, in aggregate, violated his civil rights and also constitute one or more unspecified torts. (*Id.* at 14.)

Finally, Plaintiff seeks to bring a claim "with elements regarding [p]ublic [t]rust," based on his allegation that TVA and its employees "abus[ed] their [a]uthority" and "violat[ed] the public trust" by treating him in the manner they did. (Doc. 1 at 1, 3.)

## II. Legal Standard

The Court will consider this motion under the rubric of Rule 12(b)(6). A motion to dismiss under this Rule tests the legal adequacy of the plaintiff's claim for relief. In ruling on such a motion, a court must determine, taking as true and construing in favor of the plaintiff all well-pleaded allegations in the complaint, whether the complaint states a plausible claim for relief under the law. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013). The Court is not bound to accept as true bare assertions of legal conclusions. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Rather, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Where, as here, a litigant proceeds *pro se*, the Court will construe his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court does not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

**III. Analysis**

    **A. Constitutional Tort Claims**

Plaintiff's first two claims, regarding TVA's inconsistent positions and the alleged under-the-table offer, are properly classified as constitutional tort claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens* and its progeny, the Supreme Court has recognized an implied cause of action providing for damages against individual federal officials who violate certain constitutional provisions. *See Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 774 (6th Cir. 2014). To make out a *Bivens* claim,

> a plaintiff must initially demonstrate (1) a challenged action attributable to a person acting under color of federal law, and (2) conduct that deprives the party of a constitutionally protected interest. If those elements are satisfied, the Court then proceeds to a two-step inquiry to ascertain whether a *Bivens* damages remedy should be inferred. A *Bivens* remedy is available only if (1) there are no "alternative, existing process[es]" for protecting a constitutional interest and, (2) even in the absence of an alternative, there are no "special factors counselling hesitation before authorizing a new kind of federal litigation."

*Id.* (alteration in original) (citations omitted) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

*Bivens* claims are also subject to the analogous state law statutes of limitations. *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012). In Tennessee, that period is one year. *Id.* Additionally, a cause of action under *Bivens* is only available against individual federal officers, not federal agencies or federal officers sued in their official capacities. *See, e.g.*, *Irwin v. TVA*, No. 3:12-cv-35, 2013 WL 1681838, at *3 (E.D. Tenn. Apr. 17, 2013) ("[Plaintiffs] may not rely

on *Bivens* to assert jurisdiction for constitutional claims against TVA, a federal agency."); *Hendricks v. Governor's Taskforce for Marijuana Eradication*, No. 3:05-CV-377, 2007 WL 3396480, at *4 (E.D. Tenn. Nov. 14, 2007) ("TVA is a federal agency and [TVA employee] Sergeant Klyce is a federal officer. Therefore, plaintiff's *Bivens* claim against TVA and Sergeant Klyce in his official capacity cannot be maintained.").

Plaintiff's claims do not meet these requirements. First, all of the relevant conduct occurred more than a year prior to December 30, 2015, the date the instant suit was filed (*see* Doc. 2 at 4, 5) (alleging TVA's final position regarding the value of the property rights was taken on May 10, 2013, when it filed a condemnation suit in this Court); *id.* at 4 (indicating that the "under-the-table" offer occurred prior to the filing of the condemnation suit). As such, the allegations are barred by the applicable statute of limitations. *See Zundel*, 687 F.3d at 281; Tenn. Code Ann. § 28–3–104(a)(1). Second, under this Court's own precedent, TVA and TVA employees in their official capacities are not amenable to suit under *Bivens*. *See Hendricks*, 2007 WL 3396480, at *4.[5] Plaintiff's claims against these defendants are thereby precluded.

---

[5] To the extent Plaintiff seeks to hold the Employee Defendants liable in their individual capacities, as TVA correctly points out (Doc. 17 at 14), he has failed to properly serve the individual defendants. *See King v. Taylor*, 694 F.3d 650, 655, 656 (6th Cir. 2012) (holding that service on government agency is insufficient to confer personal jurisdiction over governmental employee in his or her individual capacity) (citing *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988) (per curiam)). Here, the individual defendants have not been personally served in accordance with Rule 4(i)(3) of the Federal Rules of Civil Procedure. Service was simply made on TVA. "Although this would be sufficient to effect service on defendants in their official capacities, it cannot suffice to bring them before the court in their individual capacities." *See Ecclesiastical Order*, 845 F.2d at 116; *see also id.* ("[T]he fact that the defendants had actual notice of the suit is, of course, immaterial.").

Ultimately, however, the Court declines to dismiss Plaintiff's individual-capacity claims on this basis, since the individual defendants have not so moved, and Plaintiff has not been given notice of this deficiency and an opportunity to respond. *See* Fed. R. Civ. P. 4(m).

Third, and critically, Plaintiff has not pleaded any allegations that would allow the Court to conclude he has been deprived of a constitutionally protected interest. Plaintiff does not have a due process right not to be subjected to hard bargaining by federal employees on the public's behalf. *Cf. Wilkie*, 551 U.S. at 562 (declining to impose *Bivens* liability on "[g]overnment employees [who] are unduly zealous in pressing a governmental interest affecting property.") Even if he did, such a right was vindicated—and extinguished—by the subsequent condemnation action, at which Plaintiff had a full and fair opportunity to litigate just compensation for the taking.

Nor has Plaintiff alleged any actions by TVA that could be fairly construed as depriving him of his right not to be subjected to disparate treatment under the Equal Protection component of the Fifth Amendment. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th Cir. 2011). Plaintiff has not alleged that TVA treated him any differently than similarly situated landowners.

Put simply, Plaintiff can show no damages from TVA's bargaining tactics (other than moral indignation), and thus he is not entitled to relief, let alone the inference of a judicially created damages remedy. Because Plaintiff seeks to bring time-barred constitutional tort claims for actions which did not violate the Constitution , he fails to state a claim under *Bivens* against TVA or the Employee Defendants in either their official or individual capacities.

### B. Procedural Faults Committed During Condemnation Proceeding

Plaintiff's recitation of the numerous errors and perceived transgressions committed by TVA during the course of the condemnation action is both detailed and lengthy. (*See* Doc. 2 at 5–13 (alleging, among other things, that TVA attorneys failed to notify Plaintiff that a conference had been rescheduled, that TVA attorneys made false, misleading, and contradictory statements in court filings, that TVA filed documents beyond the deadlines set by the scheduling order, etc.) Assuming Plaintiff's account of the proceedings is entirely accurate, however, the Court still is not in a position to afford Plaintiff any relief. All of the claims related to the manner in which TVA litigated its case or to the behavior of its attorneys could and should have been addressed in the prior proceeding. If Plaintiff believed TVA was behaving improperly in its conduct of the litigation, he could have filed a motion for sanctions under Rule 11 or Rule 37 of the Federal Rules of Civil Procedure. Furthermore, if he was unhappy with the resolution reached in the condemnation proceeding, he could have appealed. What he cannot do, absent a colorable claim of malicious prosecution, is use TVA's alleged misconduct in a former proceeding as the basis for an independent claim in a subsequent action. *See, e.g.*, *Cohen v. Lupo*, 927 F.2d 363, 365 (8th Cir. 1991) ("[T]here can be no independent cause of action instituted for Rule 11 sanctions.") (citing *Port Drum Co. v. Umphrey,* 852 F.2d 148, 151 (5th Cir. 1988)).

### C. Violation of the Public Trust

Plaintiff's final claim seeks a determination regarding whether TVA and the Employee Defendants have "abused their [a]uthority" and "violated the public trust" by engaging in this "[q]uestionable [p]attern of . . . [b]ehavior[]." (Doc. 1 at 3; Doc. 2 at 14.) To the extent Plaintiff seeks to litigate on behalf of the public interest, however, the Court cannot reach the merits of

this claim because it lacks jurisdiction. Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' And the Supreme Court

> ha[s] consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lance v. Coffman*, 549 U.S. 437, 439 (2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573–74 (1992)).

Plaintiff's "public trust" claim is precisely the type of generalized grievance against the government that Article III precludes. To state a claim over which this Court can exercise jurisdiction, among other things, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (quotation marks omitted) (quoting *Lujan*, 504 U.S. at 560). Apart from specific acts directed at Plaintiff by TVA, which, as explained above, are not cognizable, any allegation regarding a violation of the public trust is, by nature, not particularized. Thus Plaintiff lacks standing to assert it.

This conclusion is reinforced by the nature of the relief sought by Plaintiff: a forward-looking injunction preventing TVA from exercising its condemnation authority as to other, unspecified individuals. As the Supreme Court held in *Ashwander v. TVA*, 297 U.S. 288 (1936):

> The pronouncements, policies, and program of the Tennessee Valley Authority and its directors, their motives and desires, d[o] not give rise to a justiciable controversy save as they ha[ve] fruition in action of a definite and concrete character constituting an actual or threatened interference with the rights of the persons complaining. The judicial power does not extend to the determination of abstract questions. . . . Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention.

*See id.* at 324–25 (citations omitted) (quotation marks omitted). As TVA's actions in future condemnation proceedings with unknown landowners are necessarily speculative, and there is no indication of imminent, concrete and particularized harm to Plaintiff, this Court is without jurisdiction to rule on Plaintiff's "public trust" claim.

**IV. Conclusion**

Because all of Plaintiff's claims fail to state a claim upon which relief may be granted, the Court will **GRANT** TVA's motion (Doc. 16) and **DISMISS** Plaintiff's complaint.[6]

**An appropriate Order shall enter.**

**ENTER:**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**

---

[6] Plaintiff's motion to compel TVA to provide addresses for the individual defendants (Doc. 23) will be **DENIED** as moot.